# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|   |   |
|---|---|
| SHANIKA MCLEAN, et al., | ) |
| Plaintiffs, | ) |
| v. | ) Case No. 16-cv-2067 (APM) |
| DISTRICT OF COLUMBIA, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

Plaintiff Shanika McLean filed suit under the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 et seq., to seek review of a Hearing Officer's determination that her minor son, D.M., was not denied a free appropriate public education during the 2013–2014 school year. The Hearing Officer determined that Defendant District of Columbia's April 2014 special education eligibility evaluation of D.M. was procedurally deficient, but found that the procedural violation did not deny D.M. a free appropriate public education and, therefore, concluded that an award of compensatory education was unwarranted.

Before the court are the parties' cross-motions for summary judgment. For the reasons that follow, the court denies the parties' motions and remands the case for further proceedings.

I

D.M., the six-year old son of Plaintiff Shanika McLean, suffers from Attention Deficit Hyperactivity Disorder ("ADHD") and Oppositional Defiant Disorder ("ODD"), but these conditions were not immediately recognized. *See* Admin. Rec., ECF No. 9, Pts. 1–7, ECF Nos. 9-

1, 9-2, 9-3, 9-4, 9-5, 9-6, 9-7 [hereinafter A.R.], at 7–10.[1] Concerned with D.M.'s behavior during the 2013–2014 school year, and at the suggestion of D.M.'s teacher, Plaintiff requested her son be evaluated for special education services. *Id.* at 6. In April 2014, D.M. underwent an initial evaluation by Early Stages, Defendant District of Columbia's assessment center. *Id.* During that initial assessment, although the Early Stages psychologist did subject D.M. to various diagnostic tests, he did not conduct a classroom observation or interview D.M.'s teacher. *Id.* at 6–7. Following this assessment, the Early Stages evaluators concluded that D.M. did not meet the eligibility criteria for "developmental delay" and, therefore, was ineligible for special education. *Id.* at 7–8; *see also* 20 U.S.C. § 1401(3)(B). Dissatisfied with that outcome, Plaintiff had D.M. independently evaluated, leading to his diagnoses with ADHD and ODD, and enrolled D.M. at a different school for the 2015–2016 academic year. A.R. at 8–9. The psychologist at D.M.'s new school performed a comprehensive evaluation of D.M. and determined he met the criteria for special education services based on a Specific Learning Disability in reading and an "Other Health Impairment," a separate type of qualifying disability, premised on his ADHD. *Id.*; *see* 20 U.S.C. § 1401(3), (30).

As a result of the discrepancy in findings between the two evaluations, Plaintiff filed a due process complaint alleging that Defendant denied D.M. a free appropriate public education ("FAPE"), as required by the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1412(a)(1)(A). Specifically, Plaintiff's complaint challenged Defendant's failure to comprehensively evaluate D.M. during the 2013–2014 school year and conduct comprehensive evaluations of him following his initial referral for evaluation in Spring 2014. *See* A.R. at 171–76.

---

[1] The Administrative Record appears on the docket in seven parts. Because the pagination is continuous throughout, the court cites to the Record as though presented as a single document.

After holding a hearing on the matter, the Hearing Officer ruled in favor of Defendant. Crediting the opinion of one of Plaintiff's experts, the Hearing Officer (1) determined that D.M.'s April 2014 special education eligibility evaluation violated the IDEA because it was prepared without conducting a classroom observation or obtaining teacher input and (2) accepted that D.M. suffered from ADHD at the time of his defective evaluation. *Id.* at 14, 16. Nonetheless, the Hearing Officer concluded D.M. was not denied a FAPE because Plaintiff had not established that D.M.'s ADHD adversely affected his academic performance or that, by reason of his ADHD, D.M. needed special education and related services. *Id.* at 16. Therefore, the Hearing Officer held, Defendant did not deny D.M. a FAPE for the 2013–2014 school year and compensatory education was unwarranted. *Id.* at 17.

II

A parent dissatisfied with the outcome of a due process hearing concerning a claim under the IDEA may appeal that decision to a federal district court. 20 U.S.C. § 1415(i)(2)(A). The reviewing court "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and, (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." *Id.* § 1415(i)(2)(C). The party challenging the hearing officer's ruling bears the burden of "persuading the court that the hearing officer was wrong." *Kerkam v. McKenzie*, 862 F.2d 884, 887 (D.C. Cir. 1988). Although the court owes some deference to the hearing officer's decision, "a hearing decision without reasoned and specific findings deserves little deference." *Reid ex rel. Reid v. District of Columbia*, 401 F.3d 516, 521 (D.C. Cir. 2005) (internal quotation marks omitted). When neither party presents additional evidence to the district court, "a motion for summary judgment operates as a motion for judgment based on the evidence comprising the record." *S.S. ex rel. Shank v.*

*Howard Rd. Acad.*, 585 F. Supp. 2d 56, 64 (D.D.C. 2008) (internal quotation marks omitted). If the administrative record lacks "pertinent findings" and neither party enters additional evidence, then the "court may determine that the appropriate relief is a remand to the hearing officer for further proceedings." *Reid*, 401 F.3d at 526 (internal quotation marks omitted).

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "genuine dispute" of a "material fact" exists when the fact is "capable of affecting the substantive outcome of the litigation" and "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Elzeneiny v. District of Columbia*, 125 F. Supp. 3d 18, 28 (D.D.C. 2015). On cross-motions for summary judgment, each party carries its own burden to demonstrate that there are no disputed material facts and it is entitled to judgment in its favor. *Ehrman v. United States*, 429 F. Supp. 2d 61, 67 (D.D.C. 2011).

III

The IDEA provides a statutory right to "[a] free appropriate public education . . . to all children with disabilities residing in the State between the ages of 3 and 21, inclusive." 20 U.S.C. § 1412(a)(1)(A). In order to meet this statutory obligation, school officials must identify those students with a disability, "develop a comprehensive strategy, known as an 'individualized education program,' or IEP, tailored to the student's unique needs," and have the IEP in place at the start of each school year. *Leggett v. District of Columbia*, 793 F.3d 59, 63 (D.C. Cir. 2015) (quoting 20 U.S.C. § 1414(d)(1)(A)). Attendant regulations set forth the criteria school officials must use when evaluating a child to determine if he or she has a disability. *See* 34 C.F.R. § 300.305(a).

Here, no one disputes the Hearing Officer's determination that Defendant violated the IDEA's procedures for determining whether D.M. had a disability during the 2013–2014 school year. The Hearing Officer explained that Defendant's initial evaluation of D.M. fell short of the regulatory mandate because "the only existing data for [D.M.] the Early Stages evaluators reported having reviewed was the Ages and Stages Questionnaire, which contained no classroom observation information or teacher input," contrary to the regulation's requirements. A.R. at 14; *see* 34 C.F.R. § 300.305(a)(ii), (iii). Defendant does not challenge that finding. Def.'s Opp'n to Pl.'s Mot. for Summ. J. & Cross-Mot. for Summ. J., ECF No. 12, at 6.

The only question presented is whether that procedural violation resulted in denial of a FAPE. "[A] procedural violation . . . will constitute a denial of a free appropriate public education only if it results in loss of educational opportunity for the student." *Leggett*, 793 F.3d at 67 (alteration adopted) (internal quotation marks omitted). In other words, "a school district's failure to comply with the procedural requirements of IDEA will be 'actionable' only 'if those procedural violations affected the student's substantive rights.'" *Id.* (quoting *Lesesne ex rel. B.F. v. District of Columbia*, 447 F.3d 828, 834 (D.C. Cir. 2006) (emphasis omitted)). A hearing officer may find a procedural violation caused the denial of a FAPE in three circumstances: the procedural inadequacy "(i) [i]mpeded the child's right to a FAPE; (ii) [s]ignificantly impeded the parent's opportunity to participate in the decision-making process regarding the provision of a FAPE to the parent's child; or (iii) [c]aused a deprivation of educational benefit." 34 C.F.R. § 300.513(a)(2).

Here, the Hearing Officer determined that, notwithstanding the procedural violation, D.M. was not denied a FAPE because the record evidence did not establish that D.M. met the definition of a "child with a disability" during the 2013–2014 school year, and, therefore, he was not entitled to a FAPE. The statute defines "child with a disability" as a child (1) who suffers from one or more

enumerated impairments, including, as pertinent here, "other health impairments," and (2) "who, by reason thereof, needs special education and related services." 20 U.S.C. § 1401(3). A child has an "other health impairment" ("OHI") when he has "limited strength, vitality, or alertness, including a heightened alertness to environmental stimuli, that results in limited alertness with respect to the educational environment," (1) "due to chronic or acute health problems such as . . . attention deficit hyperactivity disorder," that (2) "[a]dversely affects [his] educational performance." 34 C.F.R. § 300.8(c)(9). The Hearing Officer credited Plaintiff's expert's testimony that D.M. had ADHD "as early as the spring of 2014." A.R. at 16. However, the Hearing Officer found that there was insufficient evidence that D.M.'s ADHD "adversely affect[ed] his educational performance" during the 2013–2014 school year or that, by reason of his ADHD, D.M. needed "special education and related services." *Id.*; *see* 20 U.S.C. § 1412(a)(1)(A); 34 C.F.R. § 300.8(c)(9). The Hearing Officer explained his reasoning as follows:

> As Petitioner's expert, Independent Psychologist, pointed out in her testimony, Student was "normal achievement wise" at the end of the 2013–2014 school year. Student's scores on the YCAT educational achievement test, administered on April 22, 2014, were all in the Below Average or Average range. His end-of-year report card stated that he was meeting expectations in all areas, except social emotional, where he needed support to resolve social problems. Based on this record, I find that Petitioner has not met her burden of proof that at the time of the initial eligibility determination, Student's ADHD adversely affected his educational performance or that "by reason thereof, [Student] need[ed] special education and related services." Therefore, I conclude that Petitioner has not shown that the failure of the Early Stages evaluators to conduct a classroom observation or obtain teacher input resulted in a loss of educational opportunity for Student constituting a denial of FAPE. Petitioner is not entitled to relief for this procedural violation.

A.R. at 16–17 (alterations in original). In other words, the Hearing Officer determined that the record evidence did not support a finding that D.M. qualified as a "child with a disability"—a child entitled to a FAPE—during the 2013–2014 school year. Consequently, he concluded, the

6

procedural violation in D.M.'s April 2014 initial evaluation did not result in denial of a FAPE. *Id.* at 17.

The court finds the Hearing Officer's decision to be inadequate for two reasons. First, the Hearing Officer pulled a statement from Plaintiff's expert in "clinical and school psychology," Dr. Martha Ozer, *id.* at 424, out of context in order to support his conclusion that D.M. could not qualify as a "child with a disability." The full statement reads as follows:

> Q: So, now I had one last question for you Dr. Ozer and what is your opinion had [D.M.] been comprehensively evaluated back in 2014, what's your opinion about whether or not he would have been identified as eligible for a special education?
>
> . . . .
>
> A: For a 4-year old he is still in pre-school and it's – I would say he is not acting out enough that I would have been comfortable with him being diagnosed with emotionally disabled. I certainly would have diagnosed him as ADHD, certainly given some help. His normal intelligence and he is normal, he is normal achievement [w]ise, *which is not that hard to do*, his intelligence is good and he is not been in school, I mean, he is really a strong little kid. And he – I would be hesitant to qualify him as emotionally disabled at all, because he wasn't psychotic, he wasn't acting that badly, he wasn't trying to kill somebody, but he – I would have certainly given him some special ed help and some so that you begin to watch more carefully, especially if people began to watch more carefully, try out some strategies that might correct the problems he has so that they could offer those help to the next teachers he is having. And it's he should have been qualified for some help at that point. And I noticed in the reports that some number of strategies that we used with him were very very good, teaching him to calm down and meditate and all the things that said they did, but he was in a regular classroom with so many kids that was a big problem too. But you know, I hesitate to press and he certainly should have been qualified for special ed services to answer that question, but how much at 4 years old I don't know and we're not talking about that next stage yet, I'll be happy to tell you what I think about that, when that comes.

A.R. at 435–37 (emphasis added). When read in full, the statement makes plain that, in Dr. Ozer's expert opinion, although D.M.'s academic performance was satisfactory, he nevertheless required

7

special education to assist him and his instructors, both present and future, in developing strategies for coping with D.M.'s ADHD. Dr. Ozer's observation that D.M. "is normal, he is normal achievement [w]ise," was not intended to convey that D.M. did not need special education in 2014. To the contrary, by stating that achievement of educational markers "*is not that hard to do*," id. at 437 (emphasis added)—testimony that the Hearing Officer omitted when quoting her opinion—Dr. Ozer was saying just the opposite; the fact that D.M. was meeting basic expectations on paper did not correlate with whether he needed special education services. In Dr. Ozer's opinion, he "certainly" did. *Id.* Consequently, the statement to which the Hearing Officer attached nearly dispositive weight does not, in context, support the Hearing Officer's conclusion.

Second, the court finds the Hearing Officer's decision inadequate because the Hearing Officer accepted Plaintiff's experts as qualified to give opinion testimony but did not give any consideration to their professional opinions regarding D.M.'s eligibility and need for special education in 2014. Dr. Ozer testified that D.M. would have been entitled to special education services but for the procedural defect in the 2014 evaluation. *See* A.R. at 435, 437. Relatedly, Plaintiff's expert "in special education as it relates to evaluating students for determining eligibility," *id.* at 349, Dr. Wilma Gaines, opined that, had D.M. received special education services in 2014, "he should have been at or approaching grade level in both reading and math or at least he would be functioning close to that," and she would have expected to see a "reduction in his behavioral referrals" because he would have learned coping strategies. *Id.* at 370. Although both experts presented complementary professional opinions touting D.M.'s eligibility and need for special education in 2014, the Hearing Officer never mentioned either of those opinions in his decision, let alone discredited them. That omission is particularly noteworthy as to Dr. Ozer because the Hearing Examiner *did* credit her dual-opinions that D.M.'s 2014 evaluation was

8

insufficient and that D.M. had ADHD as early as the spring of 2014. *See id.* at 14, 16. That the Hearing Examiner did not even acknowledge Dr. Ozer's additional opinion as to D.M.'s eligibility and need for special education in 2014, then, is puzzling. Accordingly, because the Hearing Examiner's decision lacks "sufficiently detailed reasoning" for dismissing Dr. Ozer's and Dr. Gaines' expert opinions, *M.O. v. District of Columbia*, 20 F. Supp. 3d 31, 40–41 (D.D.C. 2013), the court gives it "little deference," *Kerkham ex rel. Kerkham v. Superintendent, D.C. Pub. Sch.*, 931 F.2d 84, 87 (D.C. Cir. 1991).

The record is simply too bare at this juncture for the court to make an informed decision as to whether the Hearing Officer correctly decided that the procedural violation did not result in D.M. being denied a FAPE during the 2013–2014 school year. Consequently, the court will vacate the Hearing Officer's decision and remand for further proceedings. *See Reid*, 401 F.3d at 526; *see also McNeil v. District of Columbia*, 217 F. Supp. 3d 107, 115–16 (D.D.C. 2016); *M.O.*, 20 F. Supp. 3d at 40–41. On remand, the hearing examiner shall assess and weigh Plaintiff's experts' testimony in deciding whether D.M., because of his ADHD, had a qualifying disability that entitled him to a FAPE during the 2013–2014 school year. In so doing, the Hearing Officer may wish to reopen the record to hear testimony from those who taught D.M. during the 2013–2014 school year, as his instructors likely have the best sense of whether D.M.'s ADHD affected his educational performance. Moreover, the Hearing Officer shall address whether the evidence presented demonstrates that the deficient evaluation that D.M. received in 2014 caused any of the three circumstances in which a procedural violation can constitute a denial of a FAPE. *See* 34 C.F.R. § 300.513(a)(2). That analysis will require the Hearing Officer to evaluate an argument that Plaintiff appears to raise for the first time in this court, namely, that the procedural violation "impeded [her]

opportunity to participate in the decisionmaking process regarding the provision of FAPE to D.M." Pl.'s Mot. for Summ. J., ECF No. 10, at 15 (referencing 34 C.F.R. § 300.513(a)(2)(ii)).

IV

In light of the foregoing discussion, the court denies the parties' motions and remands this matter to the Hearing Officer for further proceedings consistent with this Memorandum Opinion. An Order will issue separately.

Dated: September 1, 2017

Amit P. Mehta
United States District Judge